SCHOOL CITY OF EAST CHICAGO, INDIANA, Defendant-Appellant,

v.

EAST CHICAGO FEDERATION OF TEACHERS, LOCAL # 511, A.F.T., Plaintiff-Appellee.

No. 3-580A143.

Court of Appeals of Indiana, Third District.

June 25, 1981.
Rehearing Denied Sept. 10, 1981.

Nick T. Stepanovich, Stepanovich & Stevens, East Chicago, William M. Evans, Bose, McKinney & Evans, Indianapolis, for defendant-appellant.

George M. Fisher, Fisher & Von Willer, Hammond, for plaintiff-appellee.

GARRARD, Judge.

In early January, 1979, after a prior collective bargaining agreement between the appellant (school) and the appellee (union) had expired, all the school facilities operated by the school corporation were picketed. On January 17th a new agreement was reached and made effective as of January 1, 1979. This agreement contained provisions for dues deductions and for final and binding arbitration of grievances.

Subsequently, a dispute arose concerning the school's refusal to make dues deductions. The matter was submitted to arbitration. An award adverse to the school was entered, and copies thereof were mailed to the parties on July 10, 1979. Nothing further transpired until October 12, 1979, when the union filed a motion in the Lake Superior Court to secure an order confirming the arbitration award. *See* IC 34–4–2–12. The school appeared and filed an answer in which it questioned the applicability of the Uniform Arbitration Act, IC 34–4–2–1 et seq. and sought to attack the correctness of the arbitrator's decision.

After hearing, the court concluded that the Uniform Arbitration Act applied. It held that the school was precluded from challenging the correctness of the award because it had taken no action to have the award vacated or modified within ninety (90) days after copies of the award were mailed to the parties. The school appeals and challenges both the correctness of that determination and the propriety of the award itself.

Indiana adopted the Uniform Arbitration Act, IC 34–4–2–1 et seq., in 1969. Section 1 recognizes the validity and enforceability of written agreements to arbitrate.[1] In part it states,

"This act also applies to arbitration agreement between employers and employees or between their respective representatives (unless otherwise provided in the agreement)."

In essence the act provides a mechanism for enforcing agreements to arbitrate and for securing judicial review and enforcement of awards made.

■ By its plain language the statute applies to the facts before us unless application is precluded by the terms of the certificated educational employee bargaining act, IC 20–7.5–1–1 et seq., which was not enacted until 1973. That act expressly recognizes the propriety of including in a collective bargaining agreement a grievance procedure culminating in final and binding arbitration. IC 20–7.5–1–4. We, however, find no expression of any intent to exclude public employee arbitration cases from the application of the Uniform Arbitration Act.

■ Moreover, we must reject the school's contention that the parties contractually precluded application of the uniform act through their agreement to apply the voluntary labor arbitration rules of the American Arbitration Association.[2] These rules concern the selection of arbitrators and conduct of the ensuing proceedings. While they constitute a contractually agreed procedure to be followed by the parties, and to that extent supplant proce-

---

1. A scrivener's or printer's error in the first sentence of IC 34–4–2–1 has been noted in *Kendrick Memorial Hospital, Inc. v. Totten* (1980), Ind.App., 408 N.E.2d 130, n. 2. We agree with the First District that the first appearing phrase "is valid and enforceable" should be ignored as follows: "A written agree-

ment to submit to arbitration an existing controversy or a controversy thereafter arising is valid and enforceable . . . ."

2. This agreement appears as part of the grievance procedure, Article IX, C., 1, in the collective bargaining agreement.

dures provided by the uniform act,[3] they do not purport to apply to the judicial review or enforcement of awards.[4]

We hold, therefore, that the Indiana Uniform Arbitration Act applies to the present proceedings.

We are thus presented with the principal question in this appeal. Was the school entitled to litigate grounds for vacating or modifying the award in its answer to the union's petition for court confirmation of the award? The question arises because of provisions of the uniform act.

IC 34–4–2–12 provides,

"Upon application of a party, but not before ninety [90] days after the mailing of a copy of the award to the parties, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 13 and 14 [34–4–2–13, 34–4–2–14] of this act. Upon confirmation, the court shall enter a judgment consistent with the award and cause such entry to be docketed as if rendered in an action in said court."

Section 13 sets forth grounds for vacating an award, and Section 14 provides for modifying or correcting an award. Each section provides that an application for relief thereunder *shall be made within ninety (90) days* after the mailing of a copy of the arbitration award to the applicant for relief. Therefore the issue can be restated by asking whether the school is barred from challenging the correctness of the arbitrator's award because it failed to move for a vacation, modification or correction of the award within the ninety day period?

No Indiana decisions have considered the question.

An early decision construing the federal arbitration act, 9 U.S.C. § 1 et seq., permitted a respondent to a motion for confirmation to assert such defenses to the propriety of the award.[5]   *The Hartbridge* (2d Cir. 1932), 57 F.2d 672.

Two subsequent cases relied on *The Hartbridge* to hold that the three month limitation did not apply to a respondent's right to assert defenses to a motion to confirm. *Paul Allison, Inc. v. Miniken Storage of Omaha, Inc.* (D.Neb.1978), 452 F.Supp. 573; *Riko Enterprises, Inc. v. Seattle Supersonics Corporation* (S.D.N.Y.1973), 357 F.Supp. 521.

Those decisions have been distinguished by the federal district courts in Indiana. While arriving at different results, two Indiana decisions (discussed *infra*) noted that the *Hartbridge* court held that the petitioners could not preclude a respondent's right to contest the award in that fashion. It also considered the three month time limitation to be tolled by the appeal of the district court's ruling. We agree that *The Hartbridge* and cases relying upon it as decisive of the issue before us are properly distinguished.

In the first of the cases decided in Indiana, Judge Sharp concluded that a respondent could challenge the propriety of an arbitration award by answer to a motion for confirmation even though it had failed to move for a vacation or modification within the three month period. *Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 364 v. Ruan Transport Corporation* (N.D.Ind.1979), 473 F.Supp. 298. After distinguishing *The Hartbridge*, he reached this result by determining that in the federal act Congress intended to fol-

---

**3.** The act contemplates that many of its procedures may be varied by the express agreement of the parties. *See, e. g.,* IC 34–4–2–4, 5, 6.

**4.** Voluntary Labor Arbitration Rules of the American Arbitration Association, as amended January 1, 1974. *See* especially §§ 41, 42.

**5.** Concerning confirmations and objections to awards, the federal act and the Indiana act

follow the same general scheme although the federal act sets the limitation period at three months rather than ninety days. It should be noted, however, that while 9 U.S.C. § 9 allows confirmation *at any time* within one year, the Indiana act, IC 34–4–2–12, *ante*, prohibits a motion to confirm before expiration of the ninety days.

low the interpretations placed upon an earlier New York statute after which the federal act was modeled. 473 F.Supp. 302.[6]

Eleven days after Judge Sharp's decision the district court for the Southern District of Indiana reached the contrary result in *Chauffeurs, Teamsters, Warehousemen, and Helpers Local Union No. 135 v. Jefferson Trucking Company, Inc.* (S.D.Ind.1979), 473 F.Supp. 1255. It viewed the question from a different perspective, predicating its jurisdiction on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See Serstel Corporation v. Gibbs* (1981), Ind.App., 417 N.E.2d 372 for a brief discussion of the application of federal law under such circumstances.

Noting that in the absence of a specific federal limitation, federal law called for the court to apply the state statute of limitations most appropriate to the type of action, Judge Steckler determined that the Indiana Uniform Arbitration Act applied. His opinion noted that (1) the plain language of the Indiana act appeared to require that objections to an award be raised within ninety (90) days; that (2) substantive federal labor law favors the use of bargained-for arbitration to settle disputes; and that (3) short limitation periods such as those provided by IC 34–4–2–13 and 14 foster the federal policy by according finality "so that the parties who contracted for the use of arbitration get the benefit of what they bargained for—speedy resolution of disputes so that their business may go forward." 473 F.Supp. 1259.

On appeal, the Seventh Circuit affirmed overruling *Ruan Transport, supra,* sub si- lentio by holding that the question was governed by § 301 of the Labor Management Relations Act and federal substantive labor law. The Court of Appeals agreed that federal policy favoring arbitration and finality supports the conclusion that defenses to the award recognized by Sections 13 and 14 had to be asserted within the ninety (90) day period or they would be waived. *Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135 v. Jefferson Trucking Company, Inc.* (7th Cir. 1980), 628 F.2d 1023. Thus, were we here dealing with an employer subject to the National Labor Relations Act, as amended, *Jefferson Trucking* would require that we conclude the defenses were not timely asserted. *See also United Parcel Service, Inc. v. Mitchell* (1981), —— U.S. ——, 101 S.Ct. 1559, 67 L.Ed.2d 732.

This is not the case, however. The parties before us are not subject to the National Labor Relations Act, as amended. *See* 29 U.S.C. § 152(2). Moreover, in enacting the certificated educational employees bargaining act our legislature expressly declared four grounds upon which it determined that the relationship between school corporations and their certificated employees were not comparable to an employer-employee relationship in the private sector. IC 20–7.5–1–1(d).[7] Do these considerations indicate that we should reach a different result from that in *Jefferson Trucking?*

The enumerated policy considerations of (d) appear to be only tangentially related to the question we must resolve. On the other hand, IC 20–7.5–1–1(b) recognizes that the

---

**6.** The opinion cites *In re Picker* (1909), 130 App.Div. 88, 114 N.Y.S. 289 interpreting the New York act.

**7.** "(d) The relationship between school corporation employers and certificated school employees is not comparable to the relationship between private employers and employees among others for the following reasons: (i) a public school corporation is not operated for profit but to insure the citizens of the state rights guaranteed them by the Indiana state constitution; (ii) the obligation to educate children and the methods by which such education is effected will change rapidly with increasing technology, the needs of an advancing civilization and requirements for substantial educational innovation; (iii) the Indiana general assembly has delegated the discretion to carry out this changing and innovative educational function to the local governing bodies of school corporations, composed of citizens elected or appointed under applicable law, a delegation which these bodies may not and should not bargain away; and (iv) public school corporations have different obligations with respect to certificated school employees under constitutional and statutory requirements than private employers have to their employees."

principles and procedure of collective bargaining between school corporations and school employee organizations can alleviate various forms of strife and unrest.

■ We have already noted that the bargaining act expressly permits final and binding arbitration to culminate the grievance procedure. It is a proper subject for negotiation and agreement. IC 20–7.5–1–4.

We recognize, of course, that the federal policy is based in no small part upon the notion that binding arbitration is typically the *quid pro quo* for an absolute no strike clause in a labor contract. *See, e. g., United Steelworkers of America v. Warrior and Gulf Navigation Co.* (1960), 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409. The public policy opposing labor strife and its impact upon society is therefore directly promoted by encouraging arbitration as an alternative to the right to strike.

■ Indiana law does not accord public employees the right to strike. IC 20–7.5–1–14. Thus, the contractual "quo" for an agreement to arbitrate is not a policy issue. We do not take this to mean, however, that we must close our eyes to the simple truth that such strikes, in fact, occur as they did here. The effect of IC 20–7.5–1–14 is to remove those participating in such activity from the protection of the law. Where the statute is honored perhaps the visible effects of labor strife are reduced. The underlying frictions most likely are not, and when strikes in fact occur it is not unreasonable to surmise that the very illegality of the conduct may serve to further polarize the parties and the community in which they reside.

■ We think by its recognition of arbitration provisions the legislature accepted, as do we, the rationale of the federal policy

favoring early determination and quick finality in labor disputes even though the statute before us does not authorize strikes by public employees.

■ Certainly, a party who is aggrieved by the results of an arbitrator's award is entitled to a judicial review of the legality of the award.[8] We must, however, agree with Judge Steckler in *Jefferson Trucking Company* that the policies favoring arbitration are firmly aligned against permitting a party, who has voluntarily agreed to this form of dispute settlement, to simply ignore an award that has been made and then ask to be given its day in court when, in frustration, the other party is driven to institute suit for enforcement of the award. 473 F.Supp. 1259.

We therefore hold that IC 34–4–2–1 et seq. applies and precludes the assertion of all defenses that are available only by direct appeal.

■ We then reach the school's final argument. The contract settlement reached by the parties provided that the school would take no reprisals against the teachers or the union for their presettlement activities. In concluding his award the arbitrator determined that the school had unintentionally violated this provision. Relying upon Article IX, C., 2, of the agreement,[9] the arbitrator then assessed punitive damages against the school, which he measured by the reasonable attorney fees incurred by the union in the proceeding.[10]

The school argues that the award of punitive damages so exceeds the arbitrator's authority as to be void (and, accordingly, subject to collateral attack).

In order to consider this argument it is necessary to briefly review the nature of voluntary arbitration proceedings and the role of judicial review in their enforcement.

8. In this opinion we make no effort to express the various grounds upon which relief may be had. They are detailed in IC 34–4–2–13 and 14.

9. "The arbitrator shall have the right to find for and grant awards for losses suffered by the aggrieved."

10. The union urges that we address the question simply as an award of attorney fees. This we have concluded would not be proper because it would require us to ignore the arbitrator's plainly stated intent to award punitive damages. Since punitive damages is the issue, there is no significance as to whether the amount of the award appears modest or "reasonable."

■ Since arbitration arises through contract the parties are essentially free to define for themselves what questions may be arbitrated, the remedies the arbitrator may afford, and the extent to which the decision must conform to general principals of law.

■ Where, as here, the agreement contains a broad arbitration clause [11] courts have generally held that arbitrators are *not* bound by the principles of substantive law. As stated in 6 Williston, Contracts § 1929 (rev. ed. 1938),

"If the arbitration agreement is silent with regard thereto, at common law and under most of the arbitration statutes, the arbitrators may declare law as they please, and no award will be vitiated because of their legal errors."

*See also* Note, *Judicial Review of Arbitration: The Role of Public Policy*, 58 Nw.U.L. Rev. 545. The Indiana act includes provision that,

"... [T]he fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award."

IC 34–4–2–13(a).

The reason for this traditional approach is the view that a part of what the parties have bargained for is dispute resolution based upon the sense of equity or fairness of an impartial umpire who is familiar with their problems and who should not be constrained by legal technicalities.[12] See dissenting opinion, *Garrity v. Lyle Stuart, Inc.* (1976), 40 N.Y.S.2d 354, 386 N.Y.S.2d 831 at 838, 353 N.E.2d 793 at 800; *see also United Steelworkers v. Warrior & Gulf Nav. Co.* (1960), 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409.

On the other hand, as discussed in the previously cited law review note and as held by the majority in *Garrity, supra*, judicial intervention is permissible when public policy requires. 353 N.E.2d 795.

■ Where an arbitration agreement does not, itself, constrain the arbitrator's authority and the arbitrator does not "follow the law" it would appear that three choices are available to a reviewing court. The error may be disregarded as within the authority of the arbitrator. It may form the basis of a direct attack to vacate or modify the award. It may void the award as being beyond the jurisdiction of the arbitrator. Which choice should be made depends upon the nature of the error. Since many errors will fall into the category of not being grounds for any modification of the award, it follows that some public policy element must be brought to bear before an error can be "promoted" into the second category.[13] What then may constitute the third category, that at issue in the school's claim before us?

■ Having surveyed the authorities we conclude that where the arbitrator has jurisdiction of the case and of the parties it is only where he affords a form of relief that public policy does not permit the parties to voluntarily agree to, that he so acts beyond his jurisdiction that the award is void and subject to collateral attack. *Garrity v. Lyle, supra*; note, 58 Nw.U.L.Rev. 545.

We believe such a rule comports with the Indiana decisions which hold that an adjudicative tribunal must have not only jurisdiction of the subject and the person, but that it must also have the power, or authority, to render the particular judgment entered. *State ex rel. Pub. Svc. Comm. v. Johnson Cir. Ct.* (1953), 232 Ind. 501, 112 N.E.2d 429; *Stayner v. Bruce* (1953), 123 Ind.App. 467,

---

**11.** That is to say, the agreement expresses few or no limitations on the arbitrator's authority.

**12.** Note should be taken that this approach does not require the submission of all issues to the final authority of an arbitrator. It does require that an interested party foresee the problem and draft the arbitration agreement to contemplate it.

**13.** A number of the decisions speak of "manifest disregard of the law" as being sufficient to vacate an award. *See San Martine Compania de Navegacion v. Saguenay Terminals, Ltd.* (9th Cir. 1961), 293 F.2d 796.

110 N.E.2d 511. In arbitration reviews, *see also Union Employees Div. v. Columbia Typographical Union, No. 101* (D.C.Cir.1973), 353 F.Supp. 1348; *In the Matter of Meyers and Kinney Motors, Inc.* (1969), 32 App. Div.2d 266, 301 N.Y.S.2d 171; *Viola, Inc. v. Santa Barbara H.S. Dist.* (1969), 276 Cal. App.2d 425, 80 Cal.Rptr. 784.

The authority to award punitive damages falls within the proscription. In Indiana the purpose of punitive damages is not to compensate a party for his injury. Such damages are awarded as a matter of public policy to punish wrongdoers and deter future misconduct. *Vaughn v. Peabody Coal Co.* (1978), Ind.App., 375 N.E.2d 1159; *City of Gary v. Falcone* (1976), 169 Ind.App. 295, 348 N.E.2d 41.

Indeed, when a private contract purports to impose a penalty for its breach, our courts refuse enforcement. *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, *cert. den.* 415 U.S. 921, 94 S.Ct. 1421, 39 L.Ed.2d 476; *Czeck v. Van Helsland* (1968), 143 Ind.App. 460, 241 N.E.2d 272.

Accordingly, we must conclude that the arbitrator's purported award of punitive damages was void and, thus, subject to collateral attack. Pursuant to Appellate Rule 15(N) we therefore vacate that portion of the arbitrator's award granting punitive damages. In all other respects the action of the trial court is affirmed.

HOFFMAN, P. J., and STATON, J., concur.