**FORT WAYNE EDUCATION ASSOCIATION, INC.
Appellant,**

**v.**

**BOARD OF SCHOOL TRUSTEES OF THE FORT WAYNE COMMUNITY SCHOOLS, Appellee.**

No. 90A04–8904–CV–00164.

Court of Appeals of Indiana,
Fourth District.

April 9, 1991.

Richard J. Darko, Joseph R. Pitcher, Lowe Gray Steele & Hoffman, Indianapolis, for appellant.

Alan Verplanck, Barrett & McNagny, Fort Wayne, for appellee.

MILLER, Judge.

Fort Wayne Snider High School teacher Kerry A. Miller was scheduled to teach two courses in Word Power—a Latin derivatives course—instead of Spanish, which he preferred. He claimed a teacher with less seniority was treated with favoritism in the scheduling of teaching assignments. Miller and the Fort Wayne Education Association (an organization representing the licensed employees of the school district) filed a grievance on June 11, 1987 alleging violations of the Master Contract, Article XI, regarding placement, assignment and promotion. The matter proceeded through contractual and administrative remedies, and was finally submitted to arbitration. The arbitrator found that, under the terms of the contract, no reassignment occurred and denied Miller and the Association any relief. In his award, the arbitrator concluded that, in considerations of transfer and reassignment, building needs outweigh seniority/length of service. The Association, contending that the arbitrator exceeded his authority by ruling on issues not submitted, filed suit requesting the court to modify the arbitrator's award pursuant to Ind.Code 34-4-2-14. The Wells Circuit Court, after a hearing, granted summary judgment to the Board of School Trustees of the Fort Wayne Community Schools (the Board) finding that no reassignment or transfer occurred and that the issue of building needs versus seniority was moot. The Association appeals contending the trial court erred in not considering extrinsic evidence to determine whether the arbitrator exceeded his authority and that the trial court erred as a matter of law in not modifying the award.

We affirm the trial court's award of summary judgment on the issue of whether Miller was reassigned, but reverse and remand with instructions to excise the language that building needs outweigh seniority, because this part of the award exceeds the authority granted to the arbitrator under the Master Contract.

ISSUES

The issues presented have been restated as follows:

I. Did the trial court err in refusing to consider extrinsic evidence in reviewing the arbitrator's award; and

II. Did the trial court err when it failed to modify the language in the arbitrator's award in which the arbitrator awarded upon a matter not submitted, which could have been corrected without

affecting the merits of the decision pursuant to IC 34-4-2-14.

## FACTS

The underlying dispute between the Association and the Board arose out of the scheduling of classes for the 1987-88 school year. In the Spring of 1987, the head of the foreign language department was required to submit class schedules for the upcoming school year. As was customary, the teachers submitted their "wish lists" for teaching assignments. These requests resulted in conflict among the Spanish teachers. The department head scheduled a meeting with the teachers. The conflict was resolved by Miller and Alicia Bower, each agreeing to teach one section of Latin Word Power. The agreed schedule was submitted to the Assistant Principal. However, Bower later informed the Assistant Principal that she no longer desired to teach the Word Power course and that she had been pressured into the compromise. After consultation with the Principal and no consultation with the teachers or department head, Miller was assigned to teach two Word Power courses and Bower was assigned all Spanish courses.

Miller filed a grievance alleging a violation of the Contract, Article XI and requested all Spanish assignments. Miller's position was that he had more seniority/length of service with the school and that he should have been given preference. He also claimed that Bower had been given preference because she was the daughter of a former department head.

The Board's position was that Bower—a Cuban, with Spanish as her native language—was not treated with favoritism, but the principal's decision—which was solely within his discretion—was reasonable because Miller had taught the Word Power course previously and Bower had not.

The matter proceeded through contractual and administrative review and finally to arbitration pursuant to the Master Contract. The arbitrator, Robert W. Kilroy, after a hearing, determined that, in fact, Miller had not been reassigned, reasoning as follows (in pertinent part):

Based on the evidence, the arguments of the parties, and collective bargaining agreement, the arbitrator finds no violation of the agreement.

In order to prevail in this matter, the Association must demonstrate by a preponderance of the evidence: that length of service in the school system is the controlling factor in Article XI, 3.b.; and/or that the school principal was arbitrary and capricious in that application of Article XI, 3.b. The agreement and evidence in the matter does not support either proposition.

Beginning with Article II, the Board has the right, responsibility and authority to establish *and* staff curriculum and programs. Teachers are placed within the building or unit by the Board and Superintendent. And finally, assignments are made by the building principal according to the teaching needs of the school, and according to qualifications and teacher preference. The needs of the school and the qualifications of teachers to meet these needs are within the sole discretion of the principal. The only qualifiers to his/her judgment is teacher preference and assignments outside the area of teacher certification (XI–A2.ab). Length of service is absent from this section as a concept and a qualifier. Applying the facts of this case to A2.a and b, the arbitrator finds that reasons were clearly articulated for the assignments of grievant [Miller] and [Bower]. The principal credibly testifies that [Bower] was hired for her native ability to teach upper level Spanish classes. Grievant on the other hand, has had two years experience teaching Word Power and has achieved good results from students. In the absence of any evidence that grievant had equal ability in upper level Spanish classes, or that [Bower] could teach Word Power as well as grievant, the results are not arbitrary or capricious. Several teachers testified that [Bower] could teach Word Power. These conclusions are not doubted. However, the judgment to be made in this case was for

the principal, not the collective judgment of staff members upon preferences.

As a concept, length of service appears in Article XI for the first time in section 3—Transfer or Reassignment. The facts of this case do not establish that a transfer or reassignment occurred. Assignments were not made until on or about May 26, 1987. While department teachers may have decided as to what assignments they preferred, this, standing by itself, did not constitute an assignment as contemplated by Section 2.

Assuming for the purpose of the Association's argument that a transfer/reassignment occurred, the provision of b.1–4 apply. The Association argues that length of service is the controlling factor. This conclusion is not supported by the evidence or the Agreement.

During negotiation for the present and precedent Agreements, the Association proposed seniority as a criteria for reassignment, and proposed that the particular needs of the school be eliminated. These changes were resisted by the Board and no agreement was reached. This leads to the inescapable conclusion that building needs outweigh seniority/length of service considerations in transfer and reassignments.

\* \* \* \* \* \*

(R.27–28).

The Association sought judicial review in Wells Circuit Court to modify the arbitrator's award on the basis that the decision exceeded the scope of his authority. Specifically, the Association contended that the parties had agreed that Miller was reassigned and, therefore, the arbitrator's find-

ing was contrary to the parties' agreement. The Association also argued that the language—building needs outweigh seniority—should be excised. It contends that the construction of the language in the Master Contract will affect disputes between the parties on future questions concerning transfers and reassignments.[1]

## DECISION

■ When reviewing the grant of a motion for summary judgment, we stand in the shoes of the trial court. *Ft. Wayne Community Schools v. Ft. Wayne Education Association* (1986), Ind.App., 490 N.E.2d 337. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

### Issue I

The Association argues that extrinsic evidence must be reviewed to enable a court to determine whether statutory grounds for modification of an award exists. It contends the Board and the Association were in agreement prior to the arbitration on two pertinent points:

1) that Miller had been reassigned, and

2) that the four criteria under the Transfer and Reassignment provisions of the Master Contract had not been prioritized.[2]

Therefore, the Association argues, the arbitrator's decision was contrary to both parties' positions, and thus, exceeded the scope of his authority.

---

1. The Contract expired August 1989. The Association submitted its Appellant's Brief on August 30, 1989 and Appellee's Brief was filed October 30, 1989. Although we could, on the facts of this case, determine the matters to be moot as between these parties, we address these issues because they concern issues of great public interest, in that violations of the statute governing collective bargaining between school corporations and their certified employees could be detrimental to the educational environment. *Indiana Education Employment Relations Board v. Mill Creek Classroom Teachers* (1983), Ind., 456 N.E.2d 709.

2. The contract provision provides as follows:
 3. *Transfer or Reassignment*
 \* \* \* \* \* \*
 b. The reassignment and/or transfer of a teacher shall be made on the following criteria:
 (1) Qualifications in the area of vacancy.
 (2) Length of service in school system.
 (3) Mutual agreement of teacher and administration.
 (4) Particular teaching needs of the building or unit.
 \* \* \* \* \* \*
 R.(13–14).

The Association sought judicial review to modify the award pursuant to Indiana's version of the Uniform Arbitration Act, IC 34-4-2-14.[3] The arbitration hearing had not been transcribed by a reporter because neither party requested it. However, the Association did tape record the proceedings. The Association submitted to the trial court a typed transcript of the tape recorded opening and closing statements of both counsel and also submitted the post-arbitration hearing briefs of the parties. An affidavit executed by Jack Spindler, an eyewitness to the arbitration proceedings, attested to the accuracy of the documents.

The Board filed a Motion to Strike any evidence in affidavits submitted by the Association maintaining that the court was limited to reviewing the arbitration award itself. The court granted the Board's Motion to Strike, holding:

> The Court having taken this matter under advisement, the Court finds that the proper record to consider in an action brought pursuant to IC 34-4-2-14 would be the pleadings and transcript "if any" of the actual arbitration hearing, together with the arbitrator's findings and award. The Court, therefore, grants Defendant's Motion to Strike any evidence not contained in the above record. The Court is taking Defendant's Motion For Summary Judgment under advisement. Parties are ordered to submit briefs or memorandum on or before December 1, 1988. (R.106).

The Association argues that it was not permitted to submit extrinsic evidence which would be necessary for the court to determine whether statutory grounds for modification exist. The Association cites authority from other jurisdictions, which have enacted the Uniform Arbitration Act, and, in interpreting the Act, have concluded that extrinsic evidence is admissible in cases involving vacation and modification of arbitration awards to determine whether an arbitrator exceeded the terms of his submission. *Kearny PBA No. 21 v. Town of Kearny* (1979), 81 N.J. 208, 405 A.2d 393; *Fazio v. Lawyer's Liability Assurance Corporation* (1964), 347 Mass. 254, 197 N.E.2d 598; *Northern Michigan Education Association v. Board of Education of Cheboygan Area Schools* (1983), 126 Mich.App. 781, 337 N.W.2d 923; *Carolina—Virginia Fashion Exhibitors, Inc. v. Gunter* (1976), 291 N.C. 208, 230 S.E.2d 380; *Derrick v. Compton* (1967), 249 S.C. 402, 154 S.E.2d 573.

 Indiana law on this issue predates the passage of the Indiana Arbitration Act, but is in agreement with that of other jurisdictions. *Claypool v. Miller* (1836), Ind., 4 Blackf. 163 and *Moore v. Barnett* (1861), 17 Ind. 349 (objections to the award may be shown by extrinsic evidence); *Brown v. Harness* (1894), 11 Ind.App. 426, 38 N.E. 1098 (extrinsic evidence could be heard for the purpose of determining whether the arbitrator exceeded his authority). Since arbitration arises through contract, the parties are free to define for themselves what questions may be arbitrated. *School City of East Chicago v. E. Chicago Fed.* (1981), Ind.App., 422 N.E.2d 656. We, therefore, conclude that the Association should have been permitted to introduce extrinsic evidence for the purpose of determining whether the arbitrator exceeded his authority or ruled on issues not presented.

The Board contends that the trial court did have extrinsic evidence before it. After the court's ruling on the Board's Motion to Strike, the Association submitted the typed transcript of the arbitration proceedings and copies of the parties' post-arbitration hearing briefs attached to its own Motion for Summary Judgment. The Board as-

---

3. **34-4-2-14 Modification or correction of award by court; procedure**

Sec. 14. (a) Upon application made within ninety (90) days after mailing of a copy of the award to the applicant, the court shall modify or correct the award where: (1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; (2) *the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted;* or (3) the award is imperfect in a matter of form, not affecting the merits of the controversy.

serts that it is impossible to infer from the court's judgment that the material was not considered. The Court's judgment states:

The Court having taken this matter under advisement, having reviewed the Record of Proceedings together with briefs of counsel, it now grants Summary Judgment in favor of the Defendants. Court would further note that in the granting of Defendant's Motion for Summary Judgment, the court first addressed the issue as to the Arbitrator's decision that in fact no transfer or reassignment had occurred. Having granted summary judgment upon that issue, the Court considered the issue as to building needs moot. (R.168).

■ Because the court granted the Motion to Strike the affidavits submitted by the Association, we assume the court did not review the materials. However, on appeal we presume the trial court correctly decided the question presented, and the Association must rebut this presumption by clearly showing the trial court committed serious error which denied him relief to which he was entitled as a matter of law. *Farm and Home Ins. v. Konradi* (1964), 136 Ind.App. 356, 199 N.E.2d 726. The Association has not met this burden.

■ The Association claims it was prejudiced by the trial court's failure to consider the extrinsic evidence because, had it done so, it would have had to determine an issue of fact existed and consequently, would have had to deny the Board's motion for summary judgment. The issue of fact which Association claims exists is whether the parties stipulated before the arbitrator that Miller had been reassigned and that the criteria in Article XI 3(b) of the Master Contract had not been prioritized. In fact, the extrinsic evidence does not create an issue of material fact as to any such stipulation. First, Association's statement of the issues set forth in its post-hearing brief speaks in terms of *scheduling*. In the post-hearing brief submitted by the Association to the arbitrator—and also submitted to the trial court—the issues presented for review were designated as follows:

Did the *scheduling* of Kerry A. Miller to teach two classes of Word Power violate Article XI, Paragraph A2a of the current Master Contract between Fort Wayne Community Schools and Fort Wayne Education Association?

Did the *scheduling* of Kerry A. Miller to teach two classes of Word Power violate Article XI, Paragraph 3b(1)(2)(3)(4) of the current Master Contract between Fort Wayne Community Schools and Fort Wayne Education Association?

(R.142). (Emphasis added). Scheduling is not *reassignment*. In fact, from the alternative way in which the statement of issues is stated, it appears Association wasn't sure whether an assignment had been made or a reassignment and transfer. Hence, that statement of the issues defeats its own position. At another place in its brief, Association does state "the facts of the instant case involve involuntary reassignment of Kerry A. Miller within the same school building." (R. 144). However, in view of its own waffling earlier, this statement cannot create a genuine issue of fact as to whether a stipulation existed. In summary, even if the trial court had considered the stricken materials, the court could only have concluded that there was in fact no stipulation.

Furthermore, even if the parties had assumed that Miller had been reassigned, that would not affect the outcome of the court's decision. Here, the real issue was not whether Miller was reassigned but whether he was reassigned *in violation of the contract agreement*. In determining whether the reassignment was in violation of the contract, the arbitrator had the authority to interpret the contract provisions dealing with assignment and reassignment. Implicitly, the authority to interpret this contract provision contains the authority to determine that—notwithstanding the parties' assumptions—the teacher was not in fact reassigned. Additionally, the arbitrator's analysis in making the award reveals that he reasoned that, even if Miller had been reassigned as defined by the Master Contract, his reassignment under these circumstances would not violate the provisions of the Master Contract.

If the arbitrator acted within his authority, then the decision cannot be set aside by a court of law and summary judgment is appropriate. The scope of judicial review of arbitration award is extremely narrow, since undue judicial intervention would inevitably judicialize the arbitration process, thus defeating objective of providing an alternative to judicial dispute resolution. *Ethyl Corp. v. United Steelworkers of America, AFL–CIO–CLC* (1985 7th Cir), 768 F.2d 180, *cert. denied* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300. Here, the Association requested a modification of the award which can only be done in this case if the arbitrator awarded upon a matter not submitted to him *and* the award can be corrected *without affecting the merits of the decision upon the issues submitted.* IC 34–4–2–14. Therefore, we find no reversible ·error in the court's decision to exclude extrinsic evidence.

*Issue II*

The Association filed suit requesting modification of the arbitration award to excise language concerning the reassignment and prioritization of criteria under Article XI of the collective bargaining agreement. The Association specifically requested relief under IC 34–4–2–14 of the Uniform Arbitration Act which permits a court to modify the award where the arbitrator awards on a matter not submitted to him and the award may be corrected without affecting the merits of the decision upon the issues submitted. The Association claims no change in the merits is requested.

As we noted in Issue I, the matter of whether Miller's scheduling was a reassignment was an issue before the arbitrator. For this court to now determine that the arbitrator was without authority to interpret the contract to find Miller was not in fact reassigned would affect the merits of the decision. Therefore, there can be no modification of the award under the statute with respect to this issue.

However, with respect to the language that building needs outweigh seniority/length of service considerations in

transfer and reassignment, we reach a different conclusion. Where an arbitrator has jurisdiction of a case and the parties, the award may be subject to collateral attack where he grants a form of relief that public policy does not permit the parties to voluntarily agree to arbitrate. *School City of E. Chicago, supra,* at 662. After determining that a reassignment did not occur, the arbitrator concluded:

Assuming for the purpose of the Association's argument that a transfer/reassignment occurred, the provision of b.1–4 applies. The Association argues that length of service is the controlling factor. This conclusion is not supported by the evidence or the Agreement.

During negotiation for the present and precedent Agreements, the Association proposed seniority as a criteria for reassignment, and proposed that the particular needs of the school be eliminated. These changes were resisted by the Board and no agreement was reached. This leads to the inescapable conclusion that building needs outweigh seniority/length of service considerations in transfer and reassignments.

\* \* \* \* \* \*

(R.28)

We find the underscored language to be beyond the scope of the arbitrator's authority. The Master Contract, Article VIII, Section I, grievance procedure, provides that "the arbitrator shall have no authority to add to, subtract from or modify the terms of the Master Contract." (R.11). Under Article XI, Section 3–b, the reassignment and/or transfer of a teacher shall be made on the following criteria:

1) Qualifications in the area of vacancy.

2) Length of service in the school system.

3) Mutual agreement of teacher and administration.

4) Particular teaching needs of the building or unit.

We note these are factors for the school principal and the Board to consider. As such, the weighing of these factors is with-

in the sole discretion of the principal[4] and the school board.[5] The arbitration of issues between a school corporation and its employees (or representatives) is also limited by the provisions of the Certified Educational Employee Bargaining Act (CEEBA), IC 20–7.5–1–1 *et seq.* The public policy expressed by the legislature in CEEBA prohibits the arbitrator from prioritizing the contract provisions. *Tippecanoe Education Association v. Board of School Trustees* (1981), Ind.App., 429 N.E.2d 967. *Tippecanoe Education Association* held that an arbitrator is without authority to determine whether the involuntary transfer of a teacher is for the "general welfare" of the school corporation because an arbitrator cannot assume—and the school board cannot delegate—that responsibility. In *Tippecanoe Education Association,* this court analyzed the effect of CEEBA on arbitration between school corporations and their employees, as follows:

"In its prologue to CEEBA, our legislature has in part expressed its intent as follows:

'The relationship between school corporation employers and certificated school employees is not comparable to the relationship between private employers and employees among others for the following reasons: (i) a public school corporation is not operated for profit but to insure the citizens of the state rights guaranteed them by the Indiana State constitution: (ii) the obligation to educate children and the methods by which such education is effected will change rapidly with increasing technology, the needs of an advancing civilization and requirements for substantial educational innovation: (iii) *the Indiana general assembly has delegated the discretion to carry out this changing and innovative educational function to the local governing bodies of school corporations, composed of citizens, elected or appointed under applicable law, a delegation which these bodies may not and should not bargain away:* and (iv) public school corporations have different obligations with respect to certificated school employees under constitutional and statutory requirements than private employees.' (Emphasis added.)
IC 20–7.5–1–1.

In addition, the legislature has further provided in IC 20–7.5–1–6(b), with respect to the duties of such local school boards:

'School employers shall have the *responsibility and authority* to manage and direct in behalf of the public the operations and activities of the school corporation *to the full extent authorized by law.* Such responsibility and activity shall include, but not be limited to, to the right of the school employer to ...
(3) hire, promote, *transfer,* assign and retain employees.... ' (Emphasis added.)

Finally, the legislature has unambiguously declared, in IC 20–7.5–1–3:

'Duty to bargain collectively and discuss—Prohibited contract provisions.—On and after January 1, 1974, school employers and school employees shall

---

4. Article XI, A.2 of the Master Contract provides as follows:
 a. Teacher assignments within the school building or unit are made by the building principal or unit head and where appropriate in consultation with the department head according to the teaching needs of the school or unit and according to the best qualifications and preference of the teacher in that school or unit.
 (R.25).

5. The rights and responsibilities of the Board and Administration are set out in Article II of the Master Contract, which provides in pertinent part as follows:
 B. The Board has the right, responsibility and authority to manage and direct on behalf of the public the operations and activities of the school corporation to the full extent authorized by law. It is understood and agreed that all rights, responsibilities, and authority heretofore exercised by the Board or inherent in the Board as the body charged by law with operation of the school corporation and not modified expressly by any specific provision of this Master Contract are retained solely by the Board. Such rights, responsibilities, and authority of the Board shall include, but not be limited to the right to: (a) direct the work of its employees; (b) establish policies, rules, and regulations to carry out the responsibilities with which it is charged by law; (e) establish and staff curriculum and programs and select related equipment, supplies, and materials; ...
 (R.24).

have the obligation and the right to bargain collectively the items set forth in section 5 [20–7.5–1–5] and shall enter into a contract embodying any of the matters on which they have bargained collectively. *No contract may include provisions in conflict with (a) any right or benefit established by federal or state law, (b) school employee rights as defined in section 6(a) [subsection (a) of 20–7.5–1–6] of this chapter, or (c) school employer rights as defined in section 6(b) [subsection (b) of 20–7.5–1–6, supra, creating the responsibility to hire, promote, transfer and retain employees] of this chapter.* It shall be unlawful for a school employer to enter into any agreement that would place such employer in a position of deficit financing as defined in this chapter [20–7.5–1–1—20–7.5–1–14], and any contract which provides for deficit financing shall be void to the extent and any individual teacher's contract executed in accordance with such contract shall be void to such extent.' (Emphasis added.)

In construing the above statutes this court observed earlier this year in *Anderson Federation of Teachers, Local 519 v. Alexander* (1981), Ind.App., 416 N.E.2d 1327, 1331, an opinion which surprisingly has not been cited by either party to the instant appeal, that under CEEBA:

'*The scope of collective bargaining by schools, then, is to be restricted because school corporations have duties to the public, to the legislature, and to their employees as individuals, which they must not be permitted to bargain away.*' "

 \* \* \* \* \* \*

*Id.* 429 N.E.2d at 971–972.

 Clearly, by the terms of the Master Contract and pursuant to CEEBA, the arbitrator was without authority to prioritize the factors which a principal may weigh in his discretion in scheduling teacher assignments. Excising the language—building needs outweigh seniority/length of service—from the arbitrator's award does not affect the merits of the decision that Miller

was not in fact reassigned, nor does it affect the arbitrator's decision that the principal's scheduling of classes was justified. Therefore, the excising of this language—which is beyond the arbitrator's authority to determine—does not affect the merits of the award.

We affirm the trial court with respect to its determination that Miller had not been reassigned, but reverse and remand to the trial court with instructions to excise the following language from page 7 of the arbitration award: "This leads to the inescapable conclusion that building needs exceed seniority/length of service in transfer and reassignments." (R.28).

CHEZEM and SHIELDS, JJ., concur.