James BOPP, Jr., Appellant–Plaintiff,

v.

Arnold H. BRAMES, Eric M. Abel, Rhonda D. Oldham, and the partnership of Brames, Abel & Oldham, Appellees–Defendants.

No. 84A01–9605–CV–166.

Court of Appeals of Indiana.

March 31, 1997.

Barry A. Bostrom, Bopp, Coleson & Bostrom, Terre Haute, for appellant.

Arnold H. Brames, Brames & Oldham, Terre Haute, for appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

This case arose on October 12, 1992, when the partners in the law firm of Brames, Bopp, Abel & Oldham voted unanimously to dissolve their partnership. In the aftermath of the dissolution, James Bopp, Jr. filed a complaint for liquidation and receiver against his former partners, Arnold H. Brames, Eric M. Abel, Rhonda D. Oldham, and the successor partnership of Brames, Abel & Oldham. In a separate action filed the same day, Brames, Abel and Oldham and their partnership filed a complaint for damages against Bopp. The cases were consolidated for trial.[1]

On October 12, 1992, Brames, Bopp, Abel and Oldham were also partners in a real estate partnership known as Side Bar Partners (hereinafter "Side Bar"). The main asset of Side Bar was the "Tudor House," a professional office building which was leased to the law firm. Side Bar was dissolved under the terms of the Side Bar partnership agreement on November 30, 1992, and Bopp vacated the Tudor House the following month. In accordance with the agreement, the trial court removed issues regarding Side Bar from the scheduled trial and ordered the issues to binding arbitration. Each side chose one arbitrator and the two arbitrators then appointed a third.

On December 19, 1995, the arbitration panel submitted its amended Findings of Fact, Conclusions of Law and Award. The panel distributed the assets of Side Bar and stated that Side Bar should be terminated immediately. The trial court confirmed the arbitration award and entered judgment thereon.

---

1. Following the trial, the court liquidated the former partnership and divided the partnership assets. On appeal, both sides challenged the court's findings. This court decided that case in a September 12, 1995 memorandum decision, *Bopp v. Brames*, 654 N.E.2d 924 (Ind.Ct.App. 1995), *trans. denied.*

Bopp then filed a "Motion to Correct Errors in Side Bar Arbitration Order and Judgment." The court entered a corrected judgment and again confirmed the arbitration award. Bopp appeals from the trial court's decision.

## ISSUES

Bopp presents two issues for our review which we restate as:

1. Whether the arbitrators exceeded their authority.

2. Whether there was "evident partiality" by the arbitrators.

## DISCUSSION AND DECISION

### Standard of Review

Indiana's Uniform Arbitration Act provides a mechanism for enforcing agreements to arbitrate and for securing judicial review and enforcement of arbitration awards. *School City of East Chicago v. East Chicago Fed'n of Teachers, Local No. 511*, 622 N.E.2d 166, 168 (Ind.1993); *see* IND. CODE §§ 34–4–2–1 to 34–4–2–22; *see also* Ind. Alternative Dispute Resolution Rules 1, 3, 7 (adopted to bring some uniformity into alternative dispute resolution). The purpose of arbitration is to afford parties the opportunity to reach a final disposition of differences in an easier, more expeditious manner than by litigation. *Indianapolis Pub. Transp. Corp. v. Amalgamated Transit Union, Local*

*1070*, 414 N.E.2d 966, 969 (Ind.Ct.App.1981). To facilitate this purpose, judicial review of arbitration awards is very narrow in scope. *School City of East Chicago*, 622 N.E.2d at 168. We set aside an award only when one of the grounds specified by the Uniform Arbitration Act for vacation of an award is demonstrated. *Id.* A party who seeks to vacate an arbitration award under the Act bears the burden of proving the grounds to set the award aside. *Id.*

### Issue One: Scope of Authority

The arbitration panel awarded Bopp the value of his interest in the Tudor House in exchange for his execution of a quit claim deed to his former partners, Brames, Abel and Oldham. Bopp asserts that the arbitrators exceeded their powers when they ordered him to quit claim his interest in the Tudor House.[2] He contends that the arbitrators were required either to sell the real estate or to partition it so that each partner would own an undivided one-fourth interest as a tenant-in-common.

The Uniform Arbitration Act provides that an arbitration award may be challenged on the ground that "the arbitrators exceeded their powers and the award can not be corrected without affecting the merits of the decision upon the controversy submitted." IND. CODE § 34–4–2–13(a)(3).[3] This provision is to be narrowly construed. *See Inter-*

---

2. A partner is co-owner with his partners of specific partnership property holding the property as a tenant in partnership. IND. CODE § 23–4–1–25. The incidents of the tenancy are described by statute:

(a) A partner, subject to the provisions of this chapter and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners.

(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property.

(c) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. When partnership property is attached for a partnership debt, the partners, or any of them, or the representatives of a deceased partner,

cannot claim any right under the homestead or exemption laws.

(d) On the death of a partner, his right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in such property vests in his legal representative. Such surviving partner or partners, or the legal representative of the last surviving partner, has no right to possess the partnership property for any but a partnership purpose.

(e) A partner's right in specific partnership property is not subject to allowances to surviving spouses, heirs, or next of kin.

*Id.*

3. Indiana deviates from the official text of the uniform act by adding to subdivision (a)(3): "and the award can not be corrected without affecting the merits of the decision upon the controversy submitted." *See* UNIF. ARBITRATION ACT § 12(a)(3), 7, pt. I, U.L.A. 281–82 (1997).

national Bhd. of Elec. Workers, Local 1400 v. Citizens Gas & Coke Util., 428 N.E.2d 1320, 1325 (Ind.Ct.App.1981). The statutory provision does not attempt to limit the discretion and powers of a neutral arbitrator to whom a controversy has been duly submitted. Id.

■ The Uniform Arbitration Act does not declare which issues are subject to arbitration. Angell Enterprises, Inc. v. Abram & Hawkins Excavating Co., 643 N.E.2d 362, 364 (Ind.Ct.App.1994). Rather, arbitration arises through contract, and the parties are essentially free to define for themselves what questions may be arbitrated, remedies the arbitrator may afford, and the extent to which a decision must conform to the general principles of law. School City of East Chicago v. East Chicago Fed'n of Teachers, Local No. 511, 422 N.E.2d 656, 662 (Ind.Ct.App. 1981). Thus, an arbitrator is limited by the bounds of the agreement from which he draws his authority and an arbitrator is expected to be aware of those limits. International Bhd. of Elec. Workers, 428 N.E.2d at 1326.

■ Here, Bopp does not dispute that the Tudor House was a proper subject of arbitration. Rather, he contends that, according to the Side Bar partnership agreement, the arbitrators were obliged either to sell or to partition the property. In support of his position, Bopp directs us to Article VIII, Section 8–3 of the agreement which provides in part:

The *liquidation committee* shall determine all questions as to the winding up of the business affairs of the partnership ... *including the sales or partitions of properties incident thereto* and any and all other problems involved in completing the dissolution of the partnership.

(emphasis added).

Bopp's reliance on this provision is misplaced. Section 8–3 pertains only to the "liquidation committee" which was composed

of the four Side Bar partners. The committee was unable to wind up Side Bar's affairs, and this led to arbitration. Article X, entitled "Arbitration," empowers the arbitrators to settle "any claim arising out of or relating to the partnership." The article then addresses the number of arbitrators to be chosen, the manner of their appointment and the apportionment of arbitration costs. It concludes by stating that the intent of arbitration is "to avoid public controversy regarding such disputes."

The language of Article X is clear. No reference is made to the sale or partition of property. The arbitrators are not the liquidation committee. The partnership agreement does not limit the remedies available to the arbitrators. If the four attorneys who were partners in Side Bar had intended to limit the arbitrators' remedies, they undoubtedly knew how and where to say that.

■ When an award is attacked under the Uniform Arbitration Act on the grounds that the arbitrators exceeded their powers through erroneous interpretation of a contract, the reviewing court determines whether the arbitrators' construction of the contract "is a reasonably possible one that can seriously be made in the context in which the contract was made." University of Alaska v. Modern Constr., Inc., 522 P.2d 1132, 1137 (Alaska 1974) (citation omitted); see Mogge v. District 8, Int'l Ass'n of Machinists, 454 F.2d 510, 513 (7th Cir.1971) (court should not disturb award so long as interpretation was not arbitrary). The arbitration panel found that partition of the leasehold premises would only encourage further litigation and ordered Bopp to quit claim his interest in the property to his former partners. Use of a quit claim deed to extinguish a partner's interest in real property is common. The arbitrators' interpretation of the partnership agreement was a reasonable one.[4] Bopp has failed to show that the arbitrators exceeded their authority when they ordered him to

4. The arbitration award required Bopp to execute a quit claim deed for the Tudor House to Brames, Abel and Oldham in exchange for his share of the equity in the property. Even if Article VIII, Section 8.3 of the partnership agreement applied, the transfer by quit claim deed could be construed as a sale or partition under

that provision. See Culley v. McFadden Lake Corp., 674 N.E.2d 208 (Ind.Ct.App.1996) (in partition proceeding trial courts and commissioners have power to award owelty, defined as sum of money paid by one cotenant to another when land cannot be equally divided among cotenants without impairing value of all parties' interests).

quit claim his interest in the property to his former partners.

### Issue Two: Evident Partiality

Bopp also contends that the arbitrators were biased and partial. Bopp does not allege that the proceedings were unfair but seeks to demonstrate partiality from the arbitration award itself. Specifically, he insists that the following provisions improperly favor his former partners: (1) the requirement that Bopp quit claim his interest in the Tudor House to his partners; (2) the valuation of the Tudor House at $200,000.00; (3) the finding that the law firm Brames, Abel & Oldham was liable for only three-quarters of the rent through 1994; and (4) the award of Side Bar's cash balance to Brames, Abel and Oldham.[5]

■ Upon application of a party, we shall vacate an award where "there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party." I.C. § 34–4–2–13(a)(2); *see* Ind. Alternative Dispute Resolution Rule 7.4(C) (neutrals conducting alternative dispute resolution shall be impartial). While "evident partiality" is not defined under the Uniform Arbitration Act, pursuant to Indiana Code § 34–4–2–21, we construe the Uniform Arbitration Act in order "to effectuate its general purpose to make uniform the law of those states which enact similar arbitration statutes." The courts of other states which have adopted the uniform arbitration act agree

that in order to set aside an arbitration award based on partiality, a party must show interest or bias that is direct, definite and capable of demonstration; proof of partiality may not be remote, uncertain or speculative. *See, e.g., Edward Elec. Co. v. Automation, Inc.,* 229 Ill.App.3d 89, 171 Ill.Dec. 13, 593 N.E.2d 833, 841 (1992) (arbitrator must have definite interest in outcome of arbitration); *accord National Ave. Bldg. Co. v. Stewart,* 910 S.W.2d 334, 343 (Mo.Ct.App.1995); *Lancaster v. West,* 319 Ark. 293, 891 S.W.2d 357, 361 (1995); *May v. First Nat'l Pawn Brokers, Ltd.,* 269 Mont. 19, 887 P.2d 185, 189 (1994); *Morris v. Metriyakool,* 107 Mich. App. 110, 309 N.W.2d 910, 911–12 (1981), *aff'd,* 418 Mich. 423, 344 N.W.2d 736 (1984). Stated another way, when we review an arbitration award for evident partiality, we decide whether the arbitration proceedings were fundamentally unfair. *Graceman v. Goldstein,* 93 Md.App. 658, 613 A.2d 1049, 1055 (1992). As stated in our alternative dispute resolution rules:

> A neutral may not have an interest in the outcome of the dispute, may not be an employee of any of the parties or attorneys involved in the dispute, and may not be related to any of the parties or attorneys in the dispute.

Ind. Alternative Dispute Resolution Rule 7.4(E).[6]

■ Here, Bopp fails to assert any partiality other than that he did not receive the award he desired. The size of an award does not in itself raise an inference of partiality.

**5.** Bopp requests that the trial court's judgment be amended to correct the "errors" in the arbitration award. As such, Bopp is asking that we modify the arbitration award. Modification is controlled by Indiana Code § 34–4–2–14 which states:

> (a) Upon application made within ninety (90) days after mailing of a copy of the award to the applicant, the court shall modify or correct the award where: (1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; (2) the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or (3) the award is imperfect in a matter of form, not affecting the merits of the controversy.

> (b) If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected. Otherwise, the court shall confirm the award as made.

> (c) An application to modify or correct an award may be joined in the alternative with an application to vacate the award.

Given that Bopp argues "evident partiality," which is addressed in Indiana Code § 34–4–2–13, we consider his claim as one to vacate the award under that section.

**6.** A neutral is required to "utilize an effective system to identify potential conflicts of interest at the time of the appointment." Ind. Alternative Dispute Resolution Rule 7.4(C).

*Edward Elec. Co.,* 171 Ill.Dec. at 21, 593 N.E.2d at 841; *MSP Collaborative Developers v. Fidelity and Deposit Co. of Maryland,* 596 F.2d 247, 251 (7th Cir.1979); *see also Cellular Radio Corp. v. OKI America, Inc.,* 664 A.2d 357, 360–61 (D.C.1995) (bias of arbitrator must be due to some financial interest or other loyalty owed to one side of dispute). Our review of arbitration awards is narrow in scope. *School City of East Chicago,* 622 N.E.2d at 168. Once a factual question is determined in arbitration, it is finally adjudicated and cannot be relitigated. *Brougher Agency, Inc. v. United Home Life Ins. Co.,* 622 N.E.2d 1013, 1017–18 (Ind.Ct.App.1993), *trans. denied.* Further, we have stated that arbitrators are not restricted to evidence submitted by the parties but may base their decision on their own knowledge and expertise. *Fort Wayne Community Schools v. Fort Wayne Educ. Ass'n,* 490 N.E.2d 337, 340 (Ind.Ct.App.1986).

██ Under the partnership agreement the arbitrators were empowered to order Bopp to sell his interest in the Tudor House to his former partners, and this decision does not demonstrate partiality. Valuation of the Tudor House was a question of fact for the arbitration panel. We do not have the prerogative to reconsider that finding. *Angell Enterprises,* 643 N.E.2d at 366. Although the arbitrators were not restricted to the evidence submitted by the parties, the $200,-000.00 value found was within the scope of the evidence.[7] Similarly, the arbitrators showed no bias when they valued the Tudor House as of 1992, the year when Bopp moved from the property and ceased paying a share of related expenses, rather than, as Bopp contends, in 1995 when the matter was arbitrated.

██ Bopp's third challenge, the arbitrators' finding concerning the successor partnership's liability for rent, is also a question of fact and does not support Bopp's claim of bias. Nor does the award of the 1995 Side Bar cash balance to Bopp's former partners show that the arbitrators improperly favored the interests of one party over another. Bopp received his one-fourth interest in that asset valued as of December 1992.

██ Bopp was entitled to a fair proceeding, not a favorable result. We may not review the merits of the arbitration award de novo. Relitigation of the merits of arbitration awards by the courts would only serve to frustrate the purposes of arbitration. *Matter of Arbitration Between Silver City and Silver City Police Officers Ass'n,* 115 N.M. 628, 857 P.2d 28, 32 (1993).

The arbitrators considered the partnership agreement, the lease and other evidence, heard oral argument and entered their Findings of Fact, Conclusions of Law and Award. Bopp has failed to show a direct, definite and demonstrable bias on the part of any arbitrator. The arbitration proceedings were fundamentally fair. Therefore, we conclude that Bopp's claim of evident partiality is without merit.[8]

### CONCLUSION

██ It is the policy of the State of Indiana to favor enforcement of an arbitration award, and arbitration disputes are interpreted in light of that policy. *Chesterfield Management, Inc. v. Cook,* 655 N.E.2d 98, 102 (Ind.Ct.App.1995), *trans. denied.* Here, the arbitrators did not exceed the scope of their authority when they ordered Bopp to quit claim his interest in the Tudor House to his former partners. Nor has Bopp shown that the arbitrators were partial. In sum, Bopp has not demonstrated grounds for challenge permitted by the Uniform Arbitration Act. The trial court properly confirmed the arbitration award.

Affirmed.

BAKER and RILEY, JJ., concur.

---

7. The Tudor House was appraised in November of 1992 using several methods of valuation. The appraiser then estimated the market value at $190,000.00. The appraised value as of 1995 was $260,000.00.

8. In their Brief of Appellees, Brames, Abel, and Oldham also request appellate attorney's fees which we deny. While we are not persuaded by Bopp's contentions on appeal, they are not utterly devoid of all plausibility. *See* Ind. Appellate Rule 15(G); *Powers v. Lacny,* 671 N.E.2d 1215, 1217 (Ind.Ct.App.1996).