**NATARE CORPORATION,**
Appellant–Plaintiff,

v.

**D.S.I., DURAPLASTEC SYSTEMS, INC.**
**d/b/a D.S.I., Stewart J. "Jason" Mart,**
**and Aquatic Renovations Systems,**
**Inc., Appellees–Defendants.**

No. 49A05–0408–CV–430.

Court of Appeals of Indiana.

Aug. 24, 2005.

---

2. Binder abandoned Count II of his Second Amended Complaint, so we affirm summary judgment on that count.

William Bock, III, David E. Wright, Kroger, Gardis & Regas, LLP, Indianapolis, for Appellant.

Brent D. Taylor, Baker & Daniels, Indianapolis, for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Claimant, Natare Corporation (Natare), appeals the trial court's Order denying its Motion to Vacate or Modify an arbitrator's award resulting from an arbitration between Natare and Appellees–Respondents, Stewart J. Mart (Mart), D.S.I., Duraplastec Systems, Inc. d/b/a D.S.I., and Aquatic Renovation Systems, Inc. d/b/a ARS, ARS Inc., or RenoSys (collectively, RenoSys).

We reverse and remand with instructions.

### ISSUE

Natare raises one issue on appeal: whether the trial court erred when it denied its Motion to Vacate or Modify an arbitrator's award, denying it attorney fees.

### FACTS AND PROCEDURAL HISTORY

Michael T. Walsh (Walsh) is the president of Natare, a company that manufactures and sells swimming pool liners nationwide. Walsh's competitor, Mart, is the president of D.S.I. and ARS. Walsh and Mart have been involved in protracted litigation since 1989 when Natare sought an injunction to prohibit Mart from making disparaging remarks about the company.[1] In 1996, further litigation ensued between D.S.I. and Natare. To avoid incurring further costs and expenses as a result of both actions, Walsh and Mart, on behalf of their companies, entered into a settlement agreement in 1998. Pursuant to the terms of the agreement, each party was to refrain from making disparaging remarks about the other. The agreement further stated that any future claims would be submitted to a third party arbitrator who would enter a binding decision "as to whether a breach has occurred, and assessment of damages, if any .…" (Appellant's Appendix p. 98). In the event a breach was established, the non-breaching party was entitled to $5,000 liquidated damages. However, the non-breaching party was permitted to attempt to establish actual damages beyond that amount. The agreement also awarded the non-breaching party reasonable attorney fees incurred in enforcing the agreement.

In March of 2002, the parties first appeared before an arbitrator to present claims that each company had breached the settlement agreement on several different projects. In total, the arbitrator heard evidence concerning fifteen different projects. Following a hearing on March 12 through 15, 2002, the arbitrator concluded that Natare had prevailed on about half of its twelve claims and that RenoSys had prevailed on two of its six claims. The issue of attorney fees was determined at a separate hearing in July of 2002. Thereafter, in its written award, the arbitrator concluded that because Natare had prevailed on six claims and successfully defended against two of RenoSys's claims and that RenoSys had prevailed on two claims and successfully defended against six of Natare's claims, the parties had "prevailed on the same number of projects for which claims were alleged .…" (Appellant's App. p. 185). However, the arbitrator ultimately awarded only Natare attorney fees in the amount of $70,000 because, in the arbi-

---

1. The 1989 Action was initially filed by Recreonics Corporation. However, Recreonics' claims and rights were transferred to Natare pursuant to an agreement and plan of reorganization between Recreonics' owners, J. Kenneth McNeeley and Walsh, current president of Natare.

trator's opinion, RenoSys's conduct had been "unquestionably malicious." (Appellant's App. p. 185).

In September of 2002, the parties again entered into arbitration. In its demand for arbitration, Natare claimed that Reno-Sys had indirectly disseminated disparaging statements about Natare and its products. In particular, Natare claimed that RenoSys's remarks caused Natare to lose a project to renovate a public swimming pool for the City of Longmont, Colorado. Before the arbitration, the parties stipulated that had Natare performed on the contract, it would have been entitled to $45,000 in profits. Natare sought "an award of damages, along with reasonable attorney fees ... incurred in the enforcement of the Settlement Agreement." (Appellant's App. p. 91).

The case was heard before the arbitrator on October 3, 8, and 9, 2003. On January 14, 2004, the arbitrator entered an award in which he concluded that although RenoSys had disseminated disparaging materials concerning the quality of Natare's product, its actions did not cause Natare to lose the project. Specifically, the arbitrator concluded that a representative of the engineering consulting firm, which was hired to oversee the renovation project and make recommendations to the City of Longmont, was "heavily biased against [Natare] before any bids were ever solicited." (Appellant's App. p. 114). Therefore, the arbitrator awarded Natare $5,000 under the liquidated damages provision for establishing a breach, but denied Natare $45,000 actual damages on the lost project. The arbitrator also concluded that neither party could recover attorney fees.

On April 13, 2004, Natare filed a motion to vacate or, in the alternative, modify the January 14, 2004 arbitration award because the arbitrator had failed to award it attorney fees after having successfully es-

tablished a breach. Following a hearing, the trial court denied Natare's Motion.

Natare now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Natare contends that the trial court erred when it denied its Motion to Vacate or Modify the arbitration award. Indiana's Uniform Arbitration Act allows parties, who have agreed in writing to submit their claims to arbitration, to seek judicial review under limited circumstances. *Bopp v. Brames*, 677 N.E.2d 629, 631 (Ind.Ct.App.1997). However, in order to preserve the efficacy and finality of the arbitration process, the scope of judicial review is "extremely narrow." *Fort Wayne Educ. Ass'n, Inc. v. Bd. of Sch. Tr. of Ft. Wayne Cmty. Schs.*, 569 N.E.2d 672, 678 (Ind.Ct.App.1991). The trial court is restricted to determining whether a statutory basis for vacating or modifying the award exists. *Indianapolis Pub. Transp. Corp. v. Amalgamated Transit Union, Local 1070*, 414 N.E.2d 966, 969 (Ind.Ct.App. 1981). A party seeking to vacate or modify the award "bears the burden of proving the grounds to set the award aside." *Bopp*, 677 N.E.2d at 631.

On appeal, as in the trial court, Natare raises two statutory bases for setting aside the arbitrator's award. The first statute on which Natare relies requires a court to vacate an award where "the arbitrators exceeded their powers and the award can not be corrected without affecting the merits of the decision upon the controversy submitted." Ind.Code § 34–57–2–13(a)(3). In the alternative, Natare contends that the arbitrator's award may be modified pursuant to Indiana Code Section 34–57–2–14(a)(2), which provides that an award must be corrected where "the arbitrators have awarded upon a matter not submitted to them and the award may be corrected

without affecting the merits of the decision upon the issues submitted."

While relying upon both statutes, Natare focuses its argument on Section 13. Natare contends that the arbitrator exceeded his power by concluding that Natare was not entitled to attorney fees. Natare contends that the arbitrator's decision contravenes the express provisions of the settlement agreement, which provides that "any Party breaching this Agreement will be liable to the non-breaching Parties for liquidated damages in the minimum amount of $5,000, in addition to reasonable attorney fees ... incurred in the enforcement of this Agreement by the non-breaching Parties." (Appellant's App. p. 97). Thus, Natare maintains that once the arbitrator found RenoSys had breached the agreement, he had no choice but to award attorney fees, the only limitation being that the award be reasonable. Consequently, Natare asserts that the trial court should have vacated that part of the arbitrator's award denying it attorney fees.

RenoSys responds that the arbitrator had power to decide the issue of attorney fees and did, but arrived at a decision with which Natare disagrees. Specifically, RenoSys contends that because Natare succeeded only in establishing a mere "technical breach" and not its claim for $45,000 actual damages, the arbitrator had authority to determine that a reasonable fee under the circumstances was no award at all. (Appellees' Brief p. 18). Thus, RenoSys describes the arbitrator's decision as, at most, a legal error for which there is no right to judicial review. In essence, the parties disagree on how to characterize the arbitrator's decision—Natare describing the arbitrator's decision as an abuse of its

authority, subject to judicial review, and RenoSys describing it as an exercise of its discretion, for which there is no statutory relief.

Because arbitration arises through contract, the parties may determine what questions may be arbitrated and the remedies afforded. *Bopp*, 677 N.E.2d at 632. "Thus, an arbitrator is limited by the bounds of the agreement from which he draws his authority and an arbitrator is expected to be aware of those limits." *Id.* However, when an award is challenged under Subsection 13(a)(3), it is narrowly construed; the provision does not "attempt to limit the discretion and powers of a neutral arbitrator to whom a controversy has been duly submitted." *Id.* When a party contends that the arbitrator exceeded its power by erroneously interpreting a contract, "the reviewing court determines whether the arbitrators' construction of the contract 'is a reasonably possible one that can seriously be made in the context in which the contract was made.'" *Id.* (quoting *Univ. of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132, 1137 (Alaska 1974)). Thus, we must first determine how the arbitrator interpreted the attorney fee provision and then determine if that interpretation was reasonable.

During the first arbitration, Natare and RenoSys each had submitted numerous claims alleging breach by the other party. Following a hearing on the merits, the arbitrator concluded that Natare had prevailed on six of its claims [2] and that RenoSys had prevailed on two. Thereafter, a separate hearing was held to determine the issue of attorney fees. In a written award which followed, the arbitrator concluded, however, that the parties had "pre-

---

**2.** In his written award on the merits, the arbitrator concluded that Natare had prevailed on five of its twelve claims. However,

in his attorney fee award, the arbitrator concluded that Natare had prevailed on six of its claims.

vailed on the same number of projects for which claims were alleged." (Appellant's App. p. 185). The arbitrator reasoned that Natare had "successfully defended" against two of RenoSys's claims and that RenoSys had "successfully defended" against six of Natare's claims. (Appellant's App. p. 185). By considering each party's ability to successfully prove and defend each claim for breach, the arbitrator essentially read the agreement to allow recovery of attorney fees to a prevailing party. *See Salcedo v. Toepp*, 696 N.E.2d 426, 436 (Ind.Ct.App.1998) (defining prevailing party as one "who successfully prosecutes his claim or asserts his defense.").

This interpretation was also applied in the second arbitration. There, Natare had sought to prove that RenoSys had breached the agreement and caused it to lose the Colorado contract, resulting in actual damages of $45,000. Although Natare successfully established that RenoSys had breached the agreement, it was unable to prove actual damages. In his conclusion that "[n]either party [wa]s entitled to recover attorney fees," the arbitrator must have considered both Natare's success in establishing breach and RenoSys's success in defending Natare's claim for actual damages. (Appellant's App. p. 176). Thus, consistent with his interpretation in the first arbitration, the arbitrator found that the agreement permitted recovery of attorney fees in a single claim by the prevailing party and not just the non-breaching party. However, the question remains whether the arbitrator's interpretation is a reasonably possible one that can seriously be made in the context in which the contract was made. We find that it is not.

■ The agreement specifically provides that "any Party breaching this Agreement will be liable to the non-breaching Parties for liquidated damages in the minimum amount of $5,000, in addition to reasonable attorney fees ... incurred in the enforcement of this Agreement by the non-breaching Parties." (Appellant's App. p. 97). Thus, attorney fees are afforded to a party who establishes a breach by the other party. The provision does not require or allow an award of attorney fees to a prevailing party. In fact, nowhere in the agreement is the term "prevailing party" used. *See Transaction Network, Inc. v. Wellington Techs., Inc.*, 301 Mont. 212, 7 P.3d 409, 413 (2000) (finding that contract provision, allowing recovery of attorney fees, permitted recovery to non-breaching party in the event a breach occurred and not recovery to a prevailing party following any litigation).

The contract also contemplates allowing the non-breaching party to attempt to establish actual damages beyond the $5,000 liquidated damages without foregoing a reasonable attorney fee. The agreement provides that a non-breaching party is permitted to attempt to establish actual damages, even though damages are often "uncertain or difficult to ascertain." (Appellant's App. p. 97). Given the parties' recognition concerning the difficulty in establishing actual damages, they surely contemplated that an attempt to prove actual damages might ˙ be unsuccessful. However, the agreement does not include language allowing a breaching party to recover attorney fees for successfully defending a claim for actual damages. There is also no language requiring a non-breaching party, who fails to establish actual damages, to forego reasonable attorney fees incurred in establishing a breach. Therefore, we find that the arbitrator's interpretation allowing recovery of attorney fees to a prevailing party was not a reasonable one.

■ Consequently, the arbitrator exceeded his authority by considering each company's status as a prevailing party in determining attorney fees and ultimately concluding that Natare, as the non-breaching party, could not recover attorney fees. We therefore disagree with RenoSys's characterization of this issue as a mere legal error for which there is no right to judicial review. While the legal proposition is sound, it simply does not apply in this case for the reason that the parties limited the arbitrator's authority concerning attorney fees by including a fee-shifting provision within the agreement. *See Sch. City of E. Chicago, Ind. v. E. Chicago Fed'n of Teachers, Local No. 511, A.F.T.*, 422 N.E.2d 656, 662 (Ind.Ct.App.1981) (stating that legal errors generally are not subject to judicial review unless parties by agreement "constrain the arbitrator's authority" on a particular matter), *reh'g denied.*[3]

■ Nevertheless, Subsection 13(a)(3) requires a party to show not only that the arbitrator exceeded his authority but also that "the award can not be corrected without affecting the merits of the decision upon the controversy submitted." I.C. § 34–57–2–13(a)(3). This language "deviates from the official text of the uniform act" which contains only the language concerning the arbitrator's authority. *Bopp*, 677 N.E.2d at 631 n. 3. Thus, "[t]he Indiana Act places an even heavier burden upon the party seeking to vacate ...." *Int'l Bhd. of Elec. Workers, Local 1400 v. Citizens Gas & Coke Util.*, 428 N.E.2d 1320, 1326 (Ind.Ct.App.1981).

■ Applying the provision, we find that the award can be corrected without affecting the merits of the decision. Natare's entitlement to attorney fees does not in any way affect the arbitrator's conclusion that Natare had established a breach, but not actual damages. Therefore, the award may not be vacated under Subsection 13(a)(3). *See Fort Wayne Educ. Ass'n v. Fort Wayne Cmty Schs.*, 753 N.E.2d 672, 679–80 (Ind.Ct.App.2001) (concluding that while arbitrator exceeded authority in determining remedy for teacher's unwarranted termination, award was not to be vacated but modified to conform to proper remedy where modification did not affect merits of arbitrator's decision).

■ The Act, however, contemplates that a motion to vacate and a motion to modify will be considered in the alternative. *See* I.C. § 34–57–2–13(d) ("If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award."); I.C. § 34–57–2–14(c) ("An application to modify or correct an award may be joined in the alternative with an application to vacate the award."). In contrast to Subsection 13(a)(3), Subsection 14(a)(2) specifically states that an award may be modified if "the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted." I.C. § 34–57–2–14(a)(2). Thereafter, the trial court "shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected." I.C. § 34–57–2–14(b).

---

**3.** Having concluded that the arbitrator exceeded his authority in determining attorney fees, we nevertheless acknowledge that denying attorney fees might be proper under a different set of facts. This court will not enforce a fee-shifting provision if the damages established by a party proving breach are exceeded by damages proved by a party asserting a successful counterclaim. *See Willie's Const. Co. v. Baker*, 596 N.E.2d 958, 964 (Ind.Ct.App.1992), *trans. denied.* As no counterclaim was raised in this case, the holding in *Baker* does not apply.

In this case, we have already concluded that modifying that part of the arbitrator's award addressing attorney fees will not affect the merits of the controversy submitted concerning breach and damages. In addition, because the arbitrator exceeded his authority by concluding that neither party was entitled to attorney fees, he did not consider the issue of a reasonable attorney fee.[4]

## CONCLUSION

Based on the foregoing, we find that the trial court erred by denying Natare's Motion to Vacate or Modify the arbitrator's award. The arbitrator exceeded his power by considering each company's status as a prevailing party in determining attorney fees and ultimately concluding that Natare, as the non-breaching party, could not recover attorney fees. As a result, the issue of a reasonable attorney fee, to which Natare was entitled, was not submitted to or considered by the arbitrator. Given this circumstance and that the arbitrator's award can be corrected without affecting the merits, we remand with instruction for the Arbitrator to determine Natare's attorney's fees.

We reverse and remand for proceedings consistent with this opinion.

SULLIVAN, J. and NAJAM, J., concur.

4. While the agreement did not allow the arbitrator to consider RenoSys's successful defense as a basis to deny Natare attorney fees, it may be considered in the determination of a reasonable attorney fee. *See Stepp v. Duffy,* 686 N.E.2d 148, 153 (Ind.Ct.App.1997) ("An excessive attorney fee award can be avoided when fees are apportioned according to the significance of the issues upon which a party prevails, balanced against those on which the party does not prevail."), *reh'g denied, trans. denied.*