FILED

Jan 12 2017, 8:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Gordon A. Etzler
Gordon A. Etzler & Associates, LLP
Valparaiso, Indiana

ATTORNEY FOR APPELLEE

William J. Obermeyer
Obermeyer Law
Valparaiso, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Paul and Michelle Riley,<br>*Appellants-Defendants,*<br><br>v.<br><br>AAA Automotive, LLC,<br>d/b/a 3A Automotive,<br>*Appellee-Plaintiff.* | January 12, 2017<br><br>Court of Appeals Case No.<br>45A04-1602-PL-454<br><br>Appeal from the Lake Superior<br>Court<br><br>The Honorable John R. Pera,<br>Judge<br><br>Trial Court Cause No.<br>45D10-1405-PL-55 |

**Bailey, Judge.**

## Case Summary

[1] Paul and Michelle Riley ("the Rileys") appeal a judgment entered upon an arbitrator's award in favor of AAA Automotive, LLC d/b/a 3A Automotive ("3A Automotive"). The Rileys present the sole, restated issue of whether the trial court erred in refusing to vacate the award, which consisted almost entirely

of attorney's fees, apparently itemized in an ex parte document submitted to the arbitrator but not provided to the Rileys in accordance with Alternative Dispute Resolution Rule 3.4(B)[1] or provided to the trial court. We reverse.

## Facts and Procedural History

In the absence of an evidentiary hearing, we take the facts to be those undisputed by the parties. Some factual record was established in the deposition testimony of Willie Crosby Wright, Jr. ("Wright"), a shareholder together with Larry Brown of 3A Automotive, operating a car dealership in Highland, Indiana.

According to Wright's deposition testimony, 3A Automotive purchased a 2006 Dodge Durango from an auto auction in Indianapolis. 3A Automotive agreed to sell the Durango to the Rileys for $15,095.00 (including sales tax), subject to the procurement of financing. The Rileys tendered a $500.00 down payment and took possession of the Durango on December 12, 2013. However, financing was not readily forthcoming, and 3A Automotive soon contacted the Rileys to request that they make a larger down payment or trade in another

---

[1] Alternative Dispute Resolution Rule 3.4(B) provides that documents to be considered by the arbitrator are to be exchanged among all attorneys 15 days prior to a hearing.

vehicle.[2] The Rileys did not provide an additional down payment or trade-in and retained the Durango after 3A Automotive demanded its return.

[4] On May 16, 2014, 3A Automotive filed a complaint for breach of contract and conversion. The complaint sought judgment in the sum of $14,000.00, or, alternatively, the return of the Durango with compensation for diminished value, interest at the rate of 19.95%, "damages in time and money properly expended in pursuit of said converted property," attorney's fees, and punitive damages. (App. at 13.) The final prayer for relief included a request for treble damages. The complaint did not include a demand for arbitration. Separately, 3A Automotive filed its "Motion for Declaratory and Injunctive Relief and Replevin," alleging that the Durango had a retail value of $14,000.00 and 3A Automotive was entitled to its possession. (App. at 16.) On June 17, 2014, 3A Automotive filed a motion for a temporary restraining order. On that same date, 3A Automotive filed an affidavit "for Preliminary Injunction and Order for Replevin." (App. at 38.)

[5] The trial court set a hearing to address the motion for a temporary restraining order. At the conclusion of that hearing on June 24, 2014, the trial court entered an order that 3A Automotive deposit the $500.00 down payment with

_____

[2] The Rileys alleged that 3A Automotive used their personal information during approximately twenty attempts to obtain financing. The Rileys further asserted that they did not authorize the large number of credit inquiries or credit applications. It is unclear whether 3A Automotive disputed the number of financing attempts or the purported lack of authorization for some attempts. However, 3A Automotive claims that it was eventually successful in securing financing for the Durango.

the Court Clerk and that the Rileys return the Durango by 5:00 p.m. on July 9, 2014. Additionally, the Rileys were to answer the complaint by July 25, 2014. The Durango was returned on July 10, 2014 and 3A Automotive deposited the $500.00 as ordered.

[6] On July 24, 2014, the Rileys filed their answer and counterclaim. The Rileys admitted that they had signed a document in acceptance of an offer by 3A Automotive, but alleged that the procurement of financing was part of the consideration to be provided by the seller. Accordingly, the Rileys denied the existence of a "legal contract pursuant to a Retail Installment Contract and Security Agreement" as alleged by 3A Automotive in paragraph 20 of its complaint. (App. at 12.) In addition to raising an affirmative defense that financing for the Durango was not properly secured, the Rileys raised an affirmative defense that 3A Automotive lacked marketable title:

> 3A did not have the right, authority or power to sell the 2006 Dodge Durango in question. 3A did not possess marketable title to the Durango as it had a lien on it held by Next Gear Capital. Also, 3A's Exhibits in its Complaint further bolster [the] Rileys' defense that it did not possession [sic] marketable title as the information on the exhibited Title clearly reads "Non-Transferable." Therefore 3A knew or should have known that the transaction as structured by 3A would be in violation of I.C. 9-32-4-1(a)(1), (2) at time of the sale, thus breaching the contract immediately and causing it to be null and void. . . . After inspection of the Durango it was discovered that at one point it had suffered damage making it necessary to rebuild the Durango in order for it to be operational. 3A knew or should have known this. By not disclosing this to the Rileys as required per the law

> 3A has committed an unfair sales practice which makes the contract to purchase the Durango null and void.

(Tr. at 48.)

[7] The Rileys filed a counterclaim alleging fraud in the transfer of a re-built vehicle without disclosure. Additionally, the Rileys contended that the repetitive credit inquiries damages their credit-worthiness. The Rileys sought treble damages and attorney's fees. They attached as Exhibit D an appraisal indicating that the Durango had a trade-in value of $3,800 and a retail value of $7,500 to $8,500 (reduced by "nearly half if title is deemed salvage value." (App. at 56.) Exhibit H, a Carfax vehicle history report, indicates that the Durango had been declared a "total loss" on April 7, 2010 by an insurance company after "collision damage [was] reported." (App. at 65.)[3]

[8] On July 28, 2014, the trial court entered an order scheduling a case management conference. Among other things, the conference was to explore "the utilization of one or more methods of Alternative Dispute Resolution." (App. at 69.) On September 29, 2014, the trial court entered an order providing in pertinent part: "This case is referred to mediation pursuant to ADR 2.2. Parties stipulate to Douglas McMillan as Mediator." (App. at 78.) Apparently, efforts at mediation failed and, on March 17, 2015, the trial court entered an

---

[3] The report also included the following language: "Not all total loss vehicles result in a DMV-reported branded title. This may occur when an insurance company's definition of a total loss is different than the state DMV's definition for a branded title or when the owner of the vehicle is a self-insured company, like a fleet or rental company." (App. at 67.)

order as follows: "The Court further ORDERS the parties to complete arbitration with Douglas C. McMillan by June 19, 2015. The Arbitration Award shall be filed with the Court." (Tr. at 80.)

An arbitration hearing was conducted on June 4, 2015. An award[4] was rendered in favor of 3A Automotive, consisting of the following:

| | |
|---|---|
| Interest on Seller's Inventory Contract with NextGear | $ 1,526.22 |
| Court and Filing Costs | 200.00 |
| Attorney Fees and Costs (as by Affidavit) | 11,810.00 |
| Compensatory and Punitive Damages | 1,000.00 |

(App. at 173.) The award, consisting largely of attorney's fees, was approved on July 2, 2015, by a senior judge of the Lake Superior Court, Civil Division.

On August 4, 2015, the Rileys filed a motion to correct error asking that the trial court vacate the judgment entered upon the arbitration award. The Rileys argued that the arbitrator had "applied a Federal standard to a State case and committed reversible error." (App. at 177.) According to the Rileys, they had

---

[4] The award language indicates that the arbitrator derived his authority from an agreement to binding arbitration under Section 9 of the Federal Arbitration Act (9 USC § 9) *and* by court order *and* by "mutual agreement" of the parties. (App. at 165.) The arbitration briefs and trial court orders indicate only that the matter was sent to a mediator as an alternative dispute resolution method and was later submitted to the named mediator in arbitration. The Rileys indicated in their motion to correct error that they did not object to this procedure. Their specific alternative dispute resolution agreement, if any, is not included in the record before us.

agreed to mediation and "subsequently agreed to arbitrate instead." (Tr. at 178.) They asserted that the scope of the arbitration was limited in that the contract for sale had been rescinded and, as for attorney's fees:

> McMillan awarded Attorney Fees and Costs (as by affidavit) of eleven thousand eight hundred and ten dollars ($11,810) to Plaintiff. However, no showing of Attorney's fees was ever made other than in Attorney Obermeyer's Arbitration Brief stating his fees were eleven thousand eight hundred and ten dollars ($11,810). … Nowhere in his "Appendix of Supporting Documents" does it state that Statements of Billing were submitted. … [Neither] Rileys nor their Attorney have been presented any documentation to support such claim.

(App. at 179.) (internal citations omitted.) 3A Automotive filed a response, claiming that arbitration had been conducted under the Federal Arbitration Act and contending that the state court lacked jurisdiction to hear the motion to correct error. Attached to the response was an affidavit from William Obermeyer, the attorney for 3A, attesting that "the Invoices for legal services presented to Arbitrator Doug McMillan are a true and correct representation of the cost of legal services for representing AAA Automotive, LLC in this matter." (App. at 215.) No itemization was attached.

[11] The trial court conducted a hearing on January 6, 2016. At that hearing, the attorney for 3A Automotive argued his position that he was not required to provide the Rileys with the basis of his attorney's fees as it was "work product" and the award adequately rested upon "detailed invoices" provided to the arbitrator over the Rileys' objection. (Tr. at 31.)

On January 19, 2016, the trial court entered its "Order Denying Motion to Correct Error and Entering Final Judgment." (App. at 219.) On January 27, 2016, pursuant to a "Final Order and Judgment," the Rileys were ordered to pay 3A Automotive $14,036.22. This appeal ensued.

# Discussion and Decision

Indiana's Uniform Arbitration Act, Indiana Code Section 34-57-2-1 et seq., provides a mechanism for enforcing agreements to arbitrate and for securing judicial review and enforcement of arbitration awards. *Sch. City of East Chicago, Ind. v. East Chicago Fed'n of Teachers, Local No. 511, A.F.T.*, 622 N.E.2d 166, 168 (Ind. 1993). Judicial review of an arbitration award is extremely narrow in scope, and an award should be set aside only when one of the grounds specified by the Uniform Arbitration Act for vacation of the award is shown. *Id.* A party who seeks to vacate an arbitration award under the Act bears the burden of proving the grounds to set aside the award. *Id.*

Pursuant to Indiana Code Section 34-57-2-13(a), the trial court shall vacate an arbitration award where: (1) the award was procured by corruption or fraud; (2) there was evident partiality by the arbitrator; (3) the arbitrators exceeded their powers; (4) the arbitrators refused to postpone a hearing upon sufficient cause; or (5) there was no arbitration agreement and the party did not participate without objection. The parties to a contract are free to define for themselves what questions may be arbitrated, remedies the arbitrator may afford, and the extent to which a decision must conform to the general

principles of law. *Bopp v. Brames*, 677 N.E.2d 629, 632 (Ind. Ct. App. 1997). An arbitrator is limited by the bounds of the agreement from which he or she draws authority, and an arbitrator is expected to be aware of those limits. *Id.*

[15] Initially, we address the matter of whether arbitration was ordered pursuant to an arbitration clause of the sales contract. "[B]efore a court compels arbitration, it must first resolve any claims concerning the validity of the contract containing the arbitration clause." *Int'l Creative Mgmt. Inc. v. D & R Entm't Co., Inc.*, 670 N.E.2d 1305, 1311 (Ind. Ct. App. 1996), *trans. denied*. Here, the trial court ordered that each party restore the consideration in its control (the vehicle and the down-payment) but made no findings as to contract rescission or validity. Indeed, the order for arbitration makes no reference to an arbitration clause. It does not appear that arbitration was ordered based upon the failed sales contract; rather, it appears to have arisen in alternative dispute resolution.[5]

[16] Apparently, by claimed "agreement" of the parties, after the replevin order was entered, the arbitrator was tasked with determining the proper amount of damages, if any, to 3A Automotive from the Rileys' seven month retention of the Durango. He was also apparently asked to determine the proper amount of

---

[5] However, the Chronological Case Summary does not reflect that the parties filed an Agreement to Arbitrate pursuant to Indiana Rule for Alternative Dispute Resolution 3.1. That rule provides that the parties may file with the court an agreement to arbitrate wherein they stipulate whether arbitration is to be binding or non-binding, whether the agreement extends to all or a portion of the case, and the procedural rules to be followed. The rule further provides: "Upon approval, the agreement to arbitrate shall be noted on the Chronological Case Summary of the Case and placed in the Record of Judgments and Orders for the court."

damages, if any, to the Rileys from 3A's alleged fraudulent misrepresentations and repetitive credit inquiries. The arbitrator determined that the damages to 3A Automotive – apart from attorney's fees – were relatively minimal. As for the would-be purchasers who retained a vehicle that had been "totaled," the arbitrator awarded them no damages. The award upon which the trial court entered judgment primarily consisted of attorney's fees. However, the award of attorney's fees was made without a predicate finding by the trial court that the contract – including its provision for attorney's fees – was valid and enforceable.

[17] On appeal, the Rileys concede that they did not oppose arbitration after mediation could not be timely scheduled or was unsuccessful. However, neither party provided this Court with an agreement defining the scope of arbitration. The Chronological Case Summary does not reflect the filing of an agreement to arbitrate. Even assuming a proper arbitration order, without an agreement, we cannot definitively discern whether the arbitrator exceeded his authority as to substantive provisions. However, the lack of impartial and fair proceedings is evident. The arbitrator accepted an ex parte document upon which he apparently rested the award. The Rileys' lack of notice and opportunity to respond is readily apparent from the argument and admissions made by the attorney for 3A Automotive at the motion to correct error hearing:

> I did not give those [attorney fee's invoices] to the Defendant
> because I feel like they're Work Product and protected by
> Attorney/Client Privilege because they actually have my
> strategies inside of them. No objection was made that those

details weren't there. But the affidavit, which is attached – I can – yeah, I don't have a copy of the affidavit. But in arbitration, an affidavit where I swore that all my attorney fees were correct and accurate was presented to the arbitrator and to the Defendant. And I also presented the arbitrator with my detailed invoices with a claim that they were Attorney/Client Privilege and I wasn't going to turn [them] over to the Defendant. And there were objections during the arbitration made that I didn't turn those over to anyone. And the arbitrator looked at my invoices and the hours that I spent on it. My rate is very reasonable. It's too reasonable in some cases.

(Tr. at 31.) Attorney Obermeyer went on to claim that his fee was "fair" but also concede that the fees "still got out of hand." (Tr. at 31-32.) Subsequent commentary indicated that he claimed entitlement to fees to obtain a copy of the Carfax report, something relevant to his own client's defense of the counterclaim for fraud.

[18] There is no evidence of an arbitration agreement in the record and, hence, no evidence that there was a meeting of the minds concerning the scope and terms of the arbitration. Thus, the arbitration proceedings were for naught, and the judgment on the arbitration award must be vacated.[6]

---

[6] As a cautionary note, alternative dispute resolution has reached full bloom since it was first recognized by our Indiana Supreme Court. Nevertheless, absent a contract, our courts are to remain open – pursuant to Article 1, Section 12 of the Indiana Constitution – and participation in alternative dispute resolution is still voluntary. While we encourage voluntary settlement and resolution, we do so only after full disclosure of the nature of the alternative dispute method selected and its consequences to the litigants. It is incumbent upon the mediator or arbitrator to document the agreement to mediate or arbitrate in the Chronological Case Summary. *See* A.D.R. 1.8. And, moreover, where an individual has been selected first as a mediator, we question the propriety of that individual continuing to participate as an arbitrator, when he or she has first participated with the same litigants in a failed mediation.

# Conclusion

[19] The trial court erred in entering judgment upon the purported arbitration award.

[20] Reversed.

Najam, J., and May, J., concur.